## MORRISON

*v.*

## WILKINSON.

*(Supreme Court of Appeals of Virginia, June 22, 1893.)*

[17 S. E. Rep. 787.]

**Equity Judisdiction—Injunction—Enforcement of Lien—Case at Bar.***

Defendant, being about to start a newspaper, procured sufficient money to buy a printing outfit from complainant, who, to secure himself against loss, reserved a monthly rent sufficient to pay interest on his outlay, and to cover wear and tear. It was provided that defendant should become absolute owner of the printing outfit on his refunding its cost to complainant in six quarterly payments, but he made no such payment, and paid only two months' rent. To secure his debt to complainant, defendant gave him an order on the receiver in a chancery cause for what might come to him therein, and complainant applied what he received on this order generally to these and other claims held by him against defendant without objection on defendant's part: *held*, that a court of equity had jurisdiction to restrain defendant from disposing of the printing outfit as his own, and to ascertain and enforce complainant's lien on the property. Lacy, J., dissenting.

Appeal from circuit court, King William county.

Bill by E. W. Wilkinson against C. L. Morrison. From a decree for complainant, defendant appeals. Affirmed.

*Sands, Pollard & Sands* and *T. H. Edwards*, for appellant.

*H. I. Lewis, Wm. R. Aylett,* and *Isaac Diggs*, for appellee.

---

*See monographic note on "Injunctions" appended to Claytor *v.* Anthony, 15 Gratt. 518 (Va. Rep. Anno.).

FAUNTLEROY, J., delivered the opinion of the court.

The petition of C. L. Morrison complains of a decree of the circuit court of King William county, rendered on the 24th day of November, 1891, in a chancery suit in said court pending, in which E. W. Wilkinson is complainant, and the said C. L. Morrison is defendant. The bill was filed at September rules, 1891, praying for the specific performance of a written contract for the sale by the said Wilkinson, and the conditional purchase by the said Morrison, of a printing outfit, consisting of presses, type, and the machinery and material connected therewith. The bill alleged the failure and refusal of the said Morrison to comply with the terms and intent of the said contract, and alleged his insolvency, and design to sell the said property, and prayed for an injunction to restrain him from disposing of the same. The court granted the injunction, and upon the final hearing of the case overruled the demurrer to the bill, and by the decree appealed from decided that the complainant, Wilkinson, was entitled to have the said contract specifically performed, and appointed commissioners to sell the property, and pay the debt due to Wilkinson under the said contract. The record discloses the following transaction between Wilkinson and Morrison in August, 1889: Morrison, thrown out of his occupation as editor and printer by the collapse of the West Point Star, and the suit of Henly against him for settling up the affairs of the late firm of Henly & Morrison, and payment of its debts, sought to start a new paper at West Point called the "Plain Dealer," but, having no means, he applied to Wilkinson for aid to start the enterprise. Wilkinson agreed to help him, and this was the only motive of Wilkinson for going into the matter. He was not an editor or printer, and did not contemplate the remotest connection with, or participation in, the newspaper undertaking or management. Morrison wrote a memoran-

dum of the way and the terms upon which Wilkinson should aid him, which, being formulated in the contracts sued upon, was assigned by Morrison and by Wilkinson.    In pursuance of the said agreement a complete printing plant was bought and paid for by Wilkinson, at a cost of $764.13, which was shipped to Morrison, and received and possessed by him, Wilkinson's sole object being to help Morrison.    Wilkinson was the nominal owner of the printing materials thus purchased and paid for by him, and put into possession of Morrison ; and to secure himself against loss, and to indemnify against the depreciation of the printing outfit by wear and tear in its use by Morrison, he reserved a monthly rent of $10.20 to cover 6 per cent. interest upon his outlay for the purchase of the plant, and the estimate of the depreciation of salable value of the outfit by its use and wear and tear in operating the paper of Morrison.    The contract also provided that Morrison should become the buyer and absolute owner of the printing outfit upon his refunding to Wilkinson the $764.13 which he had advanced for it, in six quarterly payments to be completed on or by 31st January, 1891 ; the monthly rent to be paid in the meantime, and, when a quarterly payment should be made, the debt of $764.13 to be credited by it, and the rent to be abated *pro tanto*.    These quarterly payments did not bear interest, and Wilkinson retained his title as security until the last payment should be made.    Morrison paid two months' rent, amounting to $20.40, and never paid either any more rent, or a quarterly payment ; but, being pressed by Wilkinson for his default ; he gave to Wilkinson an order on H. R. Pollard, receiver in the suit of Henly v. Morrison, for all that might, if any, be coming to him in that cause from the assets of Henly v. Morrison.    This order was taken as a collateral security, only, and not as a payment, as it was not known what, if anything, would be coming to Morrison, and the receiver had no authority to pay or to accept the order ; and it did

not make Wilkinson the owner of Morrison's entire interest in the suit of Henly v. Morrison, as Wilkinson was to pay Morrison any surplus. Morrison's notes were not given up, nor was the contract indorsed with any credit or discharge, or canceled, and Morrison afterwards gave an order on the fund to one Slaughter. In course of time Wilkinson realized on this order the sum of $367.76 from Pollard, receiver of the decree in the cause of November 20, 1890. It appears from the statement in the record that there was other indebtedness of Morrison to Wilkinson, and that this sum realized by Wilkinson from Pollard, receiver, is credited generally ; and it does not appear that any claim or demand was made or asserted by Morrison that this net balance of $367.76 should have been applied to this contract. Morrison, however, in his answer, asserts that his order on the receiver was a payment in full, and a final discharge of his liability to Wilkinson under the contract, and that he is the absolute owner of the printing plant, and he endeavored to sell it as his own property. Thereupon Wilkinson applied for and obtained an injunction, and the circuit court of King William retained the cause. It has jurisdiction on the injunction, and the question of what payments, if any, have been made defendant, as the proceedings in chancery in the same court, of Henly v. Morrison, and the ascertainment and enforcement of the lien of Wilkinson, all made a case wholly impossible to be determined at common law, and fully giving jurisdiction to the court in equity. The court had all the matters before it, by its record, and its decree is presumed to be right, no error being exposed by the record under review. Our judgment is to affirm the decree appealed from.

LACY, J., dissenting.